UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              Case No.   3:19-cr-191-MMH-JBT

SCOTT BALOTIN
GREG CARTER
THOMAS JONES
JOHN CLARK WALTON
DAVID STEVENS
SAM TODD
DERWIN ALLEN
PABLO ORTIZ

_____

## O R D E R

**THIS CAUSE** is before the Court on motions to dismiss the operative indictment (Doc. 1; Indictment) in whole or in part filed by Scott Balotin (Docs. 275, 329; Balotin's Motions), Greg Carter (Doc. 273; Carter's Motion), and John Clark Walton (Doc. 283; Walton's Motion) (collectively, the Motions).[1] The Government has responded to the Motions (Docs. 302-03, 306, 338). Accordingly, the Motions are ripe for review.

_____

[1] In addition to filing the Motions themselves, these and others of the Defendants routinely moved to join or adopt each other's motions. However, many of the arguments adopted were individual in nature and poorly suited for general application to all Defendants. At a status conference held on May 3, 2021, the Court directed counsel to refrain from seeking to adopt motions or arguments made by other parties in the future. (Doc. 321). In an abundance of caution, the Court gave Defendants an opportunity to file amended motions to the extent they previously adopted motions or arguments of other Defendants. Id. The only Defendant who took advantage of the Court's offer was Balotin, who filed a second motion to dismiss that mirrors an argument raised in Carter's Motion. (Doc. 329).

## I.      The Indictment

On October 30, 2019, a grand jury sitting in the Middle District of Florida returned the eighteen-count Indictment charging Defendants with various crimes. In Count I, the Indictment charges all Defendants with conspiring to commit health care fraud in violation of 18 U.S.C. § 1347. Indictment at 1-8. In Counts II through VIII, the Indictment charges all Defendants except Carter with soliciting or receiving kickbacks for referring individuals to each other for health care services in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) and 18 U.S.C. § 2. Indictment at 9-10. In Counts IX through XI, the Indictment charges Balotin, Carter, and Thomas Jones with paying unlawful kickbacks to others in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) and 18 U.S.C. § 2. Indictment at 10-12. And in Counts XII through XVIII, the Indictment charges all Defendants except Derwin Allen with engaging in illegal monetary transactions in violation of 18 U.S.C. §§ 1957 and 2 (Counts XII through XVIII). Indictment at 12-14.

In general, the Indictment alleges that beginning in early 2014[2] and continuing through August 2015, Defendants conspired to defraud TRICARE, a federal health care program for the United States Department of Defense that provides coverage for military and defense personnel worldwide, by submitting unlawfully sourced claims for compounded drugs. Indictment at 5-8. Balotin,

---

[2] The Indictment alleges the conspiracy began "in or around May 2014," and the Government contends on several occasions that Balotin and Carter entered into some form of an agreement in March 2014. See, e.g., (Doc. 338 at 2).

the owner and operator of Casepark, LLC, and Carter, the owner of Park and King Pharmacy, are alleged to have employed several individuals—namely, Thomas Jones, John Clark Walton, David Stevens, Sam Todd, Derwin Allen, and Pablo Ortiz—who would contact TRICARE beneficiaries and pay them kickbacks in exchange for their personal information. Id. at 1-8. According to the Indictment, Defendants would then pay kickbacks to doctors to write fraudulent prescriptions for compounded drugs with high reimbursement rates in the names of the TRICARE beneficiaries. Id. at 7. Carter's pharmacy and "other co-conspiring pharmacies" would fill the fraudulent prescriptions, bill TRICARE, and disburse the proceeds of the scheme amongst the conspirators. Id. at 8.

## II.    Legal Standard

Under Rule 7(c)(1), Federal Rules of Criminal Procedure (Rule(s)), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" The Eleventh Circuit Court of Appeals has articulated a three part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

U.S. v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted). An indictment is generally sufficient if it "set[s] forth the offense in the words of the statute," as long as those words set forth all of the elements of the offense. Hamling v. U.S., 418 U.S. 87, 117 (1974); U.S. v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute). Consistent with this authority, the Eleventh Circuit has explained that an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime."   U.S. v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983).

However, an indictment that follows the statute is nevertheless insufficient if it fails to sufficiently apprise the defendant of the charged offense. U.S. v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). Thus, even if an indictment tracks the language of the criminal statute, it still must include enough facts and circumstances to inform the defendant of the specific offense being charged. U.S. v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). An indictment does not, however, have to "allege in detail the factual proof that will be relied upon to support the charges." U.S. v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).[3] Additionally,

---

[3] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes. It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.

Sharpe, 438 F.3d at 1263 (internal citation and quotation omitted).

## III. Discussion

### A. Balotin's Motions

Balotin has two pending motions to dismiss. In the first, he seeks dismissal based upon an alleged violation of his right to a speedy trial (Doc. 275) and in the second, he seeks dismissal of Count I on the ground that it is duplicitous - i.e., impermissibly charging distinct crimes in one count. (Doc. 329). Turning to the first motion, the Court readily concludes that the motion is due to be summarily denied. Dismissal of charges for violations of the Speedy Trial Act is appropriate only where seventy non-excludable days have passed since a defendant's indictment or arraignment, whichever is later. See 18 U.S.C. § 3161(h); see also U.S. v. Young, 528 F.3d 1294, 1295 (11th Cir. 2008). Excludable days include "[a]ny period of delay resulting from a continuance granted by any judge . . . on the basis of his [or her] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). As conceded by Balotin in his motion (Doc. 275 at 3), the Court made ends of justice findings when it granted the motions for continuances of the trial filed by Balotin's

codefendants, albeit over Balotin's objections.[4] (Docs. 207 at 2; 232). As such, the period of delay associated with the Court's continuances of the trial in this case has been excludable time under the Speedy Trial Act and Balotin's seventy-day clock has not yet run.[5]

As to the second motion, Balotin argues that Count I of the Indictment, which purports to charge a single conspiracy among all Defendants, actually alleges multiple conspiracies and is therefore duplicitous. (Doc. 329). The argument is premised on Balotin's factual assertion that many Defendants were on separate sales teams that operated independently and at different times during the operative period. Id. at 2 (describing the teams as "siloed" from one another and noting one sales group formed after Balotin and his team were no longer employed at Carter's Pharmacy). It follows, then, according to Balotin, that Defendants could not have all agreed to engage in the same conspiracy to commit healthcare fraud. The Government's response does not address the factual assertions made by Balotin. (Doc. 338 at 9-11). Instead, the Government

---

[4] To the extent Balotin's first motion seeks to relitigate whether there were sufficient grounds for the Court's ends of justice findings, the Court reaffirms its prior decisions and reiterates that the ends of justice served by continuing the trial in this case outweigh the public's interest and Balotin's interest in a speedy trial. Moreover, as previously explained by the Court, Balotin is joined for trial with the other Defendants who sought the continuances for good cause, prompting the Court to make ends of justice findings in granting each of their motions for continuance. As such, pursuant to 18 U.S.C. § 3161(h)(6), "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run . . ." is also excludable time as to Balotin.

[5] The Court also reiterates its prior ore tenus Order from the May 3, 2021 status conference denying Defendants Todd and Stevens' efforts to join Balotin's speedy trial motion. (Doc. 321).

reiterates the standard necessary to establish a conspiracy and asserts that Defendants "all knew . . . [and] played an essential role in the success of" the single conspiracy charged in Count I. Id. at 11 (emphasis added).

Upon consideration of the Indictment, the arguments presented, and the applicable authority, the Court concludes that Count I of the Indictment sufficiently pleads a single conspiracy among all Defendants. Applying the standard utilized by the Eleventh Circuit in Bobo, 344 F.3d at 1083, the Court finds Count I of the Indictment tracks the language of the conspiracy statute and includes enough factual detail to apprise Defendants of the nature of the alleged conspiracy, as evidenced by the Court's prior ruling denying a request for a bill of particulars. (Doc. 265). To grant Balotin's motion to dismiss Count I as duplicitous, the Court would have to consider his unsupported factual assertions regarding Defendants' relationships to each other, which are not in the Indictment, and give them greater weight than the factual allegations that are set forth in the Indictment. This, the Court cannot do. Indeed, it is "well-established that the sufficiency of a criminal indictment is determined from its face," and as such, in ruling on a motion to dismiss, "a district court is limited to reviewing the face of the indictment . . . ." Sharpe, 438 F.3d at 1263 (internal quotations omitted). It would also require the Court to weigh the sufficiency of the allegations presented in the Indictment to determine whether they establish one or multiple conspiracies, effectively asking the Court to engage in

the same analysis it would in a civil motion for summary judgment. This, the Court also cannot do. The Eleventh Circuit has unequivocally instructed "[t]here is no summary judgment procedure in criminal cases. Nor do the rules [of criminal procedure] provide for a pre-trial determination of sufficiency of the evidence." U.S. v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) (quoting U.S. v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992)). Thus, because the Court has concluded that Count I of the Indictment sufficiently pleads a single conspiracy against all Defendants, Balotin's request for dismissal on the basis of what he believes the evidence at trial will show is unavailing. See Sharpe, 438 F.3d at 1263 ("a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.") (quoting U.S. v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987)).

Here, because the single conspiracy charge in Count I is adequately alleged, it will be the Government's burden to prove that charge at trial. That is, that there was a single agreement among all Defendants to commit healthcare fraud and each Defendant was a knowing and voluntary member of that single conspiracy. See U.S. v. Moran, 778 F.3d 942, 960 (11th Cir. 2015) (outlining the elements necessary for a conspiracy conviction). If the Government cannot meet its burden, such as if it only proves the existence of multiple, distinct conspiracies instead of the single conspiracy charged in the Indictment, the Court can revisit Defendants' arguments after the close of the

Government's case. <u>See</u> Fed. R. Crim. P. 29(a); <u>Salman</u>, 378 F.3d at 1268-69 (noting that once a defendant is properly indicted, "the government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to [Rule] 29.").

Although premature at this stage of the proceedings, the legal argument at the heart of Balotin's second motion may be implicated based on the facts presented at trial. In <u>U.S. v. Chandler</u>, a case heavily relied on by Balotin and others in arguing Count I is duplicitous, the defendants were indicted on a single conspiracy to commit mail fraud. 376 F.3d 1303, 1306, 1316 (11th Cir. 2004). In what the Eleventh Circuit described as "a classic 'hub-and-spoke' conspiracy," a single individual—Jacobson—embezzled game pieces from various McDonald's Corporation promotional games. <u>Id.</u> He then conspired with friends and family to recruit others to redeem the game pieces, with a portion of each prize getting sent back to Jacobson and the other conspirators. <u>Id.</u> at 1306. However, the evidence at trial showed (1) Jacobson went to great lengths to ensure the various recruiters were not aware of each other's involvement in the scheme, and (2) many of the recruiters and individuals who redeemed the game pieces were unaware the game pieces were obtained by Jacobson unlawfully. <u>Id.</u> at 1316. Thus, in continuing the hub-and-spoke analogy, Jacobson was the only person in the hub of the conspiracy who knew the essential nature of the plan—to embezzle game pieces and receive a share of

the fraudulently obtained prize money. Id. at 1316-18. As such, the Eleventh Circuit found each interaction between Jacobson and a recruiter was an individual conspiracy and it was an "error of constitutional proportions" to convict defendants of the single conspiracy charged in the indictment. Id. at 1318 ("[a]lthough the defendants' alleged misrepresentations to McDonald's might have constituted acts in furtherance of the charged conspiracy, proof of such misrepresentations alone does not prove they joined the conspiracy indicted by the grand jury to embezzle and fraudulently redeem the game stamps.").

Balotin relies on Chandler and similar cases to argue that the allegations in the Indictment are not accurate reflections of Defendants' relationship to each other and the "real" facts will show the Government cannot prove a single conspiracy. As discussed above, such an argument cannot be considered by the Court on a motion to dismiss an indictment. See, e.g., Salman, 378 F.3d at 1268-69; Sharpe, 438 F.3d at 1263. At this stage, the facts contained in the Indictment do not implicate the same concerns that were present in Chandler and the Government has not strayed from its position that the single conspiracy charged in Count I of the Indictment will be proven at trial. Nonetheless, Chandler serves as a cautionary tale for the Government and the Court. Therefore, the Government should be diligent in assuring the single conspiracy alleged in the Indictment—not the multiple conspiracies asserted by

Defendants—will be proven at trial, just as the Court must be diligent in removing from the jury's consideration any conspiracy not charged in the Indictment.[6]

    B. <u>Carter's Motion</u>

The Court turns next to Carter's Motion in which Carter presents two arguments. First, he seeks to relitigate the sufficiency of the Indictment, and second, he raises substantively the same argument as Balotin asserted in his motion to dismiss Count I as duplicitous. Like Balotin's first motion, Carter's first basis for seeking dismissal is due to be summarily rejected. Carter moved for a bill of particulars (Doc. 219) in which he asserted that the Indictment did not sufficiently inform him of how he allegedly violated the law. The Honorable Joel B. Toomey, United States Magistrate Judge, denied the motion after a hearing. (Docs. 240, 242). Carter objected to Judge Toomey's decision (Doc. 246), but the undersigned overruled his objections (Doc. 265). The Court did so because the Indictment sufficiently outlines the conspiracy to commit health care fraud, provides detail on Carter's payment of alleged kickbacks to explicit individuals, and identifies specific monetary transactions that the grand jury

---

[6] Because district courts cannot engage in pre-trial determinations regarding the sufficiency of the evidence, the risk exists that legally meritless cases will be brought to trial. <u>Salman</u>, 378 F.3d at 1268-69 (recognizing the Eleventh Circuit's "system of criminal procedure may result in legally meritless cases being sent to trial, but absent further legislative direction, it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance.").

deemed unlawful. <u>See generally</u> Indictment. As such, Carter's first argument presents no basis for dismissal.[7]

Similarly, Carter's argument that Count I alleges multiple conspiracies is unavailing. Carter's argument follows the same basic formula as Balotin's second motion to dismiss.[8] For example, Carter argues Defendants worked for Carter's pharmacy during different time periods and therefore could not have conspired with Defendants at the same time; the sales teams led by Balotin, Walton, and Stevens were in competition, not collusion, with each other; and there is insufficient evidence to support a finding that a single conspiracy existed among all Defendants. <u>See</u> Carter's Motion at 18-22. For the reasons discussed in Section III(A), <u>supra</u>, these arguments fail and do not warrant dismissal of Count I of the Indictment at this stage of the case. Carter's Motion is due to be denied, as are the motions of all Defendants who sought to join Carter's Motion.[9]

### C. <u>Walton's Motion</u>

Finally, Walton, who was indicted as one of the doctor and patient recruiters in the conspiracy, moves to dismiss the charges against him, arguing that his alleged conduct is constitutionally protected commercial speech.

---

[7] To the extent Carter argues the conduct alleged was lawful and cannot support a conviction, such an argument is premature and can be raised after the close of the Government's case. <u>See</u> <u>Salman</u>, 378 F.3d at 1268-69.

[8] <u>See</u> (Doc. 329 at 1 n.1).

[9] Specifically, Jones (Doc. 274); Stevens (Doc. 278); Walton (Doc. 281); and Todd (Doc. 293).

Walton's Motion at 3-13. Walton also moves to dismiss Count VII of the Indictment based on his contention that Count VII is duplicitous because the single kickback he allegedly received was remuneration for multiple patient referrals. Id. at 13-17.

With respect to the commercial speech issue, Walton maintains that the only conduct he engaged in was the marketing of pharmaceutical products to patients, which is a protected activity. See id. at 3 (citing Sorrell v. IMS Health, Inc., 564 U.S. 552 (2011)). The Government contests Walton's description of his role in the conspiracy, citing evidence produced in discovery that he, among other things, conspired with doctors to write fraudulent prescriptions. (Doc. 306 at 2). This factual dispute is indicative of a fatal flaw in Walton's Motion: it asks the Court to engage in a pretrial determination of the sufficiency of the evidence against Walton, which the Court cannot do. See Salman, 378 F.3d at 1268-69. Like Balotin's second motion to dismiss and Carter's Motion, addressed above, Walton's argument can only be considered if the Court assumes his unsupported facts, which do not appear in the Indictment, are true and gives them greater weight than the allegations in the Indictment. At this stage of the case, such a determination is improper. Id.

Walton's argument also suffers from another defect. He relies heavily on U.S. v. Caronia, 703 F.3d 149 (2d Cir. 2012) and related cases for the proposition that pharmaceutical promotion will always be protected commercial speech and

exempt from criminal prosecution. However, for commercial speech to be protected under the First Amendment, the speech, "as a threshold matter . . . must not be misleading and must concern lawful activity." Id. at 164 (citing Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 566 (1980)). As alleged in the Indictment, Walton's speech was not merely salesmanship; he is alleged to have engaged in unlawful activities by paying TRICARE beneficiaries kickbacks in exchange for their participation in the scheme to defraud TRICARE and recruiting doctors to write fraudulent prescriptions. Indictment at 6-7. Thus, based on the face of the Indictment, Walton's speech would not be protected under the First Amendment because it concerned unlawful activity. Should the evidence presented at trial indicate otherwise, Walton—like the other Defendants—can make an appropriate motion contesting the sufficiency of the evidence after the close of the Government's case. See Fed. R. Crim. P. 29(a).

As to Walton's second argument, the Court finds that Count VII of the Indictment is not duplicitous. Walton is charged with receiving remuneration in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) and 18 U.S.C. § 2. Indictment at 9-10. To prove this charge at trial, the Government must show Walton "(1) knowingly and willfully (2) solicited or received money (3) for referring individuals to a health care provider (4) for the furnishing of services to be paid by" a federal health care program—i.e., TRICARE. U.S. v. Nerey, 877 F.3d 956,

968 (11th Cir. 2017). Thus, it is Walton's receipt of the lump sum kickback that forms the basis of the charge in Count VII, not the individual referrals. The Indictment sufficiently charges Walton with violating the anti-kickback provision and the Government's burden at trial will be to connect the payment received by Walton with the referrals he allegedly procured. For these reasons, Walton's Motion is due to be denied, as are the motions of all Defendants who sought to join in it.[10]

Accordingly, it is

**ORDERED:**

1.    Defendant Scott Balotin's Motion to Dismiss (Doc. 275) and Defendant Scott Balotin's Motion to Dismiss Count I (Doc. 329) are **DENIED**.

2.    Defendant Greg Carter's Motion to Dismiss Indictment and Incorporated Memorandum of Law (Doc. 273) is **DENIED**.

3.    Defendant John Clark Walton's Motion and Memorandum of Law to Dismiss Counts One and Seven (Doc. 283) is **DENIED**.

---

[10]  Specifically, Carter (Doc. 287), Balotin (Doc. 290), and Todd (Doc. 293).

4.    To the extent Defendants properly incorporated any of the above Motions as their own, the same are **DENIED**.

    **DONE AND ORDERED** in Jacksonville, Florida this 9th day of June, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc29
Copies to:

Counsel of Record