UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 3:19-cr-191-MMH-JBT

SCOTT BALOTIN

**UNITED STATES' SECOND AMENDED MOTION
FOR PRELIMINARY ORDER OF FORFEITURE FOR
PROCEEDS AND FOR SUBSTITUTE ASSETS**

The United States of America respectfully moves, pursuant to 18 U.S.C. §
982(a)(1) and (7) and Fed. R. Crim. P. 32.2(b)(2), for entry of a preliminary order of
forfeiture for proceeds against defendant Scott Balotin in an amount of $2,763,945.66
representing the proceeds he personally obtained as a result of the conspiracy to
commit health care fraud as charged in Count One of the Indictment, and the
$300,000 in proceeds involved in his illegal monetary transaction as charged in
Count Twelve of the indictment, for which Balotin was convicted. As described in
more detail below, the Court may enter this forfeiture order for proceeds and
property involved in an illegal monetary transaction, based on record evidence and
testimony.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), the
United States also requests the Court enter a preliminary order of forfeiture for the
following substitute assets, in partial satisfaction of the preliminary order of forfeiture
for proceeds and involved in property:

a.     Real Property located at 1133 W. Kesley Lane, St. Johns, St. Johns County, Florida 32259, including all improvements thereon and appurtenances thereto;

b.     Real property located at 2984 Myra Street, Jacksonville, Duval County, Florida 32205-5861, including all improvements thereon and appurtenances thereto;

c.     Real property located at 2678 Ernest Street, Jacksonville, Duval County, Florida 32204-3427, including all improvements thereon and appurtenances thereto;

d.     Rea property located at 5831 Begonia Road, Jacksonville, Duval County, Florida 32209-2422, including all improvements thereon and appurtenances thereto;

e.     Real property located 4056 Jammes Road, Jacksonville, Duval County, Florida 32210-5078, including all improvements thereon and appurtenances thereto;

f.     Real property located at 3638 Jammes Road, Duval County, Florida 32210-5056, including all improvements thereon and appurtenances thereto;

g.     Real property located at 2319 Eudine Drive, W., Jacksonville, Duval County, Florida 32210-2622, including all improvements thereon and appurtenances thereto; and

h.     Real property located at 5839 Cedar Oaks Drive, Jacksonville, Duval County, Florida 32210-3808, including all improvements thereon and appurtenances thereto.

In support of its motion, the United States submits the following memorandum of law.

<u>MEMORANDUM OF LAW</u>

## I.   STATEMENT OF FACTS

### A.   Allegations Against Balotin

1.      Balotin was charged in a multi-count Indictment, in pertinent part, with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1347 (Count One), and with engaging in an illegal monetary transaction in violation of 18 U.S.C. § 1957 (Count Twelve). Doc. 1.

2.      The Indictment also contained forfeiture allegations putting Balotin on notice that, *inter alia*, pursuant to 18 U.S.C. § 982(a)(7), the United States would seek a preliminary order of forfeiture for proceeds in the amount of at least $2,527,373.37 representing the amount of proceeds he obtained as a result of the commission of the offense charged in Count One (among other counts) and that, pursuant to 18 U.S.C. § 982(a)(1), the United States would seek property involved in the offense charged in Count Twelve, or any property traceable to such property. *Id.* at 15-17. In addition, the United States sought forfeiture of specific and substitute assets. *Id.*

### B.   Finding of Guilt

3.      On September 27, 2021, a jury trial commenced. The jury found Balotin guilty as to Counts One and Twelve of the Indictment. Doc. 522.

4.      Balotin's sentencing is currently scheduled for the week of October 2, 2023. Doc. 708.

**C.     Relevant Facts Established at Trial**

5.     At trial, the United States introduced evidence demonstrating the amount of proceeds Balotin obtained from the offense charged in Count One and the amount of proceeds involved in the illegal monetary transaction charged in Count Twelve. The evidence, which was offered through the testimony of Internal Revenue Service Special Agent Pete Corigliano, included email and text communications, bank records, employee payroll records, earning statements, and other financial records. *See* Trial Tr. I, p. 217-253; Trial Tr. II, p. 25-257; Trial Tr. VII, p. 157-191.

6.     The financial records most relevant to the amount of proceeds were admitted as the following United States' Trial Exhibits:

   a.  Exhibit 2A: CD Disk containing the complete bank records of Balotin's Suntrust account ending in 3416;

   b.  Exhibit 2B: Park & King Earnings Statement for Balotin (for period starting December 11, 2014 and ending December 26, 2014), reflecting a net pay of $430,680.20;

   c.  Exhibit 2D: Balotin's Suntrust 3416 Statement (for the statement period of January 1, 2015 through January 30, 2015), showing the $430,680.20 deposit on January 2, 2015);

   d.  Exhibit 2E: Park and King Pharmacy Payroll Details (reflecting checks dated from September 30, 2014 through December 31, 2014 for the pay period from November 1, 2014 through June 2, 2015);

   e.  Exhibit 5B: Park & King Pharmacy Payroll Details (reflecting check dates from January 2, 2015 through December 31, 2015 for the pay period from December 8, 2014 through January 28, 2015);

4

    f.   Exhibit 12A: Balotin's USAA Account ending in 1681 (January 2015 Statement, showing Year-to-Date Value of $835,407.02); and

    g.   Exhibit 12B: Balotin's Suntrust 3416 (January 2015 Statement showing $300,000 transferred from Suntrust 3416 to USAA Account Ending in 1681 via Electronic Funds Transfer).

*See* Doc. 517.

## II.   APPLICABLE LAW

### A.   Forfeiture Authority

Because forfeiture is an aspect of sentencing, the United States need only prove by a preponderance of the evidence that the forfeiture requested is warranted. *See United States v. Dicter,* 198 F.3d 1284, 1289-90 (11th Cir. 1999); *United States v. Hasson,* 333 F.3d 1264, 1278 (11th Cir. 2003) (extending preponderance standard to forfeiture cases under 18 U.S.C. § 982(a)(1)).

#### i.   *Proceeds of the Health Care Fraud Conspiracy*

The forfeiture of assets obtained as a result of a conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, is governed by 18 U.S.C. § 982(a)(7). Section 982(a)(7) requires the forfeiture of any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a Federal health care offense. 18 U.S.C. § 982(a)(7). A "Federal health care offense," in turn, is defined in 18 U.S.C. § 24, and includes violations of 18 U.S.C. § 1349 relating to health care benefit programs.

#### ii.   *Property Involved In an Illegal Monetary Transaction*

The forfeiture of assets involved in an illegal monetary transaction, in

5

violation of 18 U.S.C. § 1957, is governed by 18 U.S.C. § 982(a)(1). Section 982(a)(1) requires the forfeiture of any property, real or personal, involved in such offense, or any property traceable to such property. 18 U.S.C. § 982(a)(1). The phrase "involved in" has been interpreted broadly by courts to include "any property involved in, used to commit, or used to facilitate the offense." *United States v. Seher*, 562 F.3d 1344, 1369 (11th Cir. 2009) (internal quotations omitted).

   *iii.*  *Substitute Assets*

   The Court's authority to order the forfeiture of substitute assets is found in 21 U.S.C. § 853(p), which is incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1). As relevant here, section 853(p) provides that if — as a result of any act or omission of the defendant — property subject to forfeiture has been transferred or sold to, or deposited with, a third party, or has been commingled with other property which cannot be divided without difficulty, the court shall order the forfeiture of any other property of the defendant, up to the value of any property subject to forfeiture. *See* 21 U.S.C. § 853(p)(1)-(2); *see also United States v. Soreide*, 461 F.3d 1351, 1352 n.1 (11th Cir. 2006) (per curiam) (section 853(p) "provide[s] for forfeiture of substitute assets of the defendant if the property involved in or traceable to the crime is not available for forfeiture.").

   Rule 32.2(e)(1)(B) further provides that, on the United States' motion, the Court may "at any time" enter an order of forfeiture to include substitute property that qualifies for forfeiture under an applicable statute. Indeed, if the government

establishes that the property is subject to forfeiture under Rule 32.2(e)(1), the court

"must" enter an order forfeiting the property. Rule 32.2(e)(2)(A).

Unlike other types of forfeiture under 21 U.S.C. § 853 and Rule 32.2(e)(1)(B), there is no nexus or tracing requirement for the forfeiture of substitute property under 21 U.S.C. § 853(p) and Rule 32.2(e)(1)(B). By definition, substitute property can be "any" property of the defendant. In fact, substitute assets are only forfeitable because the traceable and directly forfeitable property is unavailable. *See* 21 U.S.C. § 853(p); *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007) (Congress chose broad language providing that any property of the defendant may be forfeited as a substitute asset and that Courts cannot carve out exceptions to the statute).

Any of the defendant's property having less than or equal value to forfeited property can be substituted where a defendant has concealed or disposed of the proceeds of the illegal activity or property derived from those proceeds. *See United States v. Reed,* 924 F.2d 1014, 1017-18 (11th Cir. 1991) (business building in defendant's name which, after verdict of forfeiture, was encumbered and then transferred to third parties was forfeitable as substitute asset). As the Seventh Circuit noted, a defendant may be ordered to forfeit "every last penny" he owns as substitute assets to satisfy an outstanding forfeiture order. *See United States v. Carroll*, 346 F.3d 744 (7th Cir. 2003).

## B.     Court's Determination of Forfeiture

Federal Rule of Criminal Procedure 32.2 governs the criminal forfeiture of property based on a defendant's conviction for the offense giving rise to the

forfeiture. Rule 32.2(b)(1)(A) requires that, as soon as practical after a verdict or finding of guilty, or after a plea of guilty is accepted, the Court "must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). The Court's determination may be based "on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B).

When a defendant no longer has the actual dollars or property traceable to proceeds in his possession, or the government cannot locate those assets, the Court's obligation to forfeit simply takes the form of an order of forfeiture for proceeds in favor of the United States. *See United States v. Padron*, 527 F.3d 1156, 1161-62 (11th Cir. 2008). Here, the United States could not locate all the specific property constituting or derived from the proceeds Balotin obtained from his participation in the health care fraud conspiracy, and likewise could not locate proceeds involved in Balotin's illegal monetary transaction. Thus, pursuant to Rule 32.2(b)(2), the United States seeks a preliminary order of forfeiture for proceeds and involved in property against Balotin.

Once the Court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b)(2)(a). The preliminary order of forfeiture entered becomes final as to the defendant at sentencing, or earlier if the defendant consents. Fed. R. Crim. P. 32.2(b)(4)(A).

## III.   LEGAL ARGUMENT

From the testimony and exhibits presented at trial, the Court has a sufficient factual basis to enter an order of forfeiture against Balotin for proceeds obtained from

the health care fraud conspiracy and for proceeds involved in Balotin's illegal

monetary transaction. Specifically, record evidence shows that Balotin received

health care fraud conspiracy proceeds from Park and King Pharmacy into his

Suntrust Bank account ending in 3416 ("Suntrust 3416"), and that Balotin moved

more than $10,000 of those health care fraud proceeds in an illegal monetary

transaction from Suntrust 3416 to a joint USAA account he held with his wife, Ellen

Balotin, ending in 1681 ("USAA 1681"). Thus, the same evidence supporting

Balotin's jury conviction of Counts One and Twelve (Doc. 522) is sufficient to also

support the Court's determination of its preliminary forfeiture order against Balotin

by a preponderance of the evidence.

**A.    The Proceeds Balotin Obtained as a Result of the Health Care Fraud Conspiracy**

*i.    The Amount of Proceeds Is Supported by Record Evidence*

At trial, the United States entered evidence that showed the movement of the

health care fraud proceeds from TRICARE to Park and King Pharmacy to Balotin.

The aggregate of the sums of money transferred from TRICARE, through Park and

King Pharmacy, and ultimately to Balotin's Suntrust 3416, is $2,763,945.66.[1] For

the Court's convenience, the below Table 1 provides a summary of the payments by

---

[1] When the United States calculated the amount of the money judgment sought in the Indictment, "at least $2,527,373.37," (Doc. 1 at 17), it did not specifically include the two wire transactions dated July 8, 2014, and October 16, 2014.

Park and King to Balotin, which is supported by the Suntrust 3416 bank records

introduced into evidence as United States' Trial Exhibit 2A.

| Table 1 | | | |
|---|---|---|---|
| SUMMARY OF PAYMENTS BY PARK & KING PHARMACY TO SCOTT BALOTIN | | | |
| **Date** | **Deposit Amount** | **Account Number** | **Source of Funds** |
| 05/16/14 | $25,945.05 | Suntrust 3416 | Park and King Pharmacy |
| 06/03/14 | $31,613.00 | Suntrust 3416 | Park and King Pharmacy |
| 06/06/14 | $32,997.38 | Suntrust 3416 | Park and King Pharmacy |
| 06/11/14 | $15,739.00 | Suntrust 3416 | Park and King Pharmacy |
| 06/17/14 | $15,739.00 | Suntrust 3416 | Park and King Pharmacy |
| 06/26/14 | $49,450.50 | Suntrust 3416 | Park and King Pharmacy |
| 07/08/14 | $19,062.50 | Suntrust 3416 | Park and King Pharmacy |
| 07/17/14 | $133,455.00 | Suntrust 3416 | Park and King Pharmacy |
| 08/05/14 | $214,501.50 | Suntrust 3416 | Park and King Pharmacy |
| 08/19/14 | $88,801.32 | Suntrust 3416 | Park and King Pharmacy |
| 09/04/14 | $68,796.00 | Suntrust 3416 | Park and King Pharmacy |
| 09/17/14 | $83,889.00 | Suntrust 3416 | Park and King Pharmacy |
| 10/01/14 | $97,875.59 | Suntrust 3416 | Park and King Pharmacy |
| 10/06/14 | $52,447.82 | Suntrust 3416 | Park and King Pharmacy |
| 10/16/14 | $217,509.79 | Suntrust 3416 | Park and King Pharmacy |
| 11/03/14 | $220,179.88 | Suntrust 3416 | Park and King Pharmacy |
| 11/17/14 | $130,353.88 | Suntrust 3416 | Park and King Pharmacy |
| 11/21/14 | $5,795.25 | Suntrust 3416 | Park and King Pharmacy |
| 12/02/14 | $226,406.64 | Suntrust 3416 | Park and King Pharmacy |
| 12/17/14 | $197,767.33 | Suntrust 3416 | Park and King Pharmacy |
| 12/18/14 | $8,430.04 | Suntrust 3416 | Park and King Pharmacy |
| 01/02/15 | $430,680.20 | Suntrust 3416 | Park and King Pharmacy |
| 01/21/15 | $30,936.51 | Suntrust 3416 | Park and King Pharmacy |
| 01/21/15 | $307,486.82 | Suntrust 3416 | Park and King Pharmacy |
| 02/02/15 | $58,086.66 | Suntrust 3416 | Park and King Pharmacy |
| **Total** | **$2,763,945.66** | | |

Agent Coriligano testified that TRICARE claims data showed that Park and

King Pharmacy claims "increased exponentially" between 2014 and 2015,

increasing from $190,000 in 2013, to over $4 million in 2014, to approximately $13

10

million from January through March 2015. Trial Tr. I, at p. 230; Trial Tr. II, at p. 247. That exponential increase is consistent with the increase of deposit amounts that Balotin received from Park and King Pharmacy over time, as reflected in Table 1.

>          ii.      *The Proceeds Amount Reflects the Net Proceeds Obtained by Balotin*

Notably, these payment amounts come from Suntrust 3416 records. Thus, the amounts reflect the *net proceeds* obtained by Balotin, after deductions for federal income tax, social security, and Medicare, as set forth in Balotin's Earning Statement, introduced into evidence as United States' Trial Exhibit 2B and as provided in the below Table 2.

**Table 2**



| Company Code RW / XZ2 21867463 | Loc/Dept 01/ | Number 77021 | Page 1 of 1 | Earnings Statement | ADP |

Park And King Pharmacy Inc
4163 Oxford Avenue
Jacksonville, FL 32210

Period Starting: 12/11/2014
Period Ending: 12/26/2014
Pay Date: 12/31/2014

Taxable Marital Status: Married
Exemptions/Allowances: Tax Override:
Federal: 4    Federal:
State: 0    State:
Local: 0    Local:
Social Security Number: XXX-XX-XXXX

SCOTT M BALOTIN

JACKSONVILLE, FL 32217

| Earnings | rate | hours/units | this period | year to date |
| --- | --- | --- | --- | --- |
| Regular | | | 0.00 | 2365200.97 |
| Commission | | 0.00 | 737401.29 | 1459083.39 |
| **Gross Pay** | | | **$737,401.29** | $3,824,284.36 |

| Statutory Deductions | this period | year to date |
| --- | --- | --- |
| Federal Income | -289392.16 | 1442813.03 |
| Social Security | 0.00 | 7254.00 |
| Medicare | -10692.32 | 55452.12 |
| Medicare - HI | -6636.61 | 32618.56 |
| **Net Pay** | **$430,680.20** | |

| Deposits account number | transit/ABA | amount |
| --- | --- | --- |
| XXXXXX3416 | XXXXXXXXX | 430680.20 |

At trial, Agent Coriligano explained how to read the Park and King Pharmacy Earnings Statements, stating that the statements "list the direct deposit

amounts, the last four numbers of that patient recruiter's account number, and the amount per payment, and the total amount." Trial Tr. II, at p. 60. Balotin's Earning Statement shows "a payroll payment through ADP from Park and King Pharmacy to Scott Balotin," (Trial Tr. II, at p. 58-59) for the two-week pay period starting on December 11, 2014 through December 26, 2014, indicating the direct deposit of net income in the amount of $430,680.20 (originally gross pay of $737,401.29 before federal income tax, social security, and Medicare deductions) into Balotin's account ending in 3416.

The account ending in 3416, as referenced in Balotin's Earnings Statement, was in fact Balotin's Suntrust 3416. Balotin's January 2015 bank statement for Suntrust 3416 (United States' Trial Exhibit 2D), an excerpt of which is provided in Table 3 below, showed a deposit of $430,680.20 in an Electronic/ACH credit from "Park and King Ph Direct Dep" which is an amount identical to the "net pay" reflected in Balotin's Earnings Statement.

| Table 3 | | | | |
|---|---|---|---|---|
| | | ACCOUNT SUMMARY | | |
| ACCOUNT TYPE | | ACCOUNT NUMBER | STATEMENT PERIOD | TAXPAYER ID |
| SIGNATURE ADVANTAGE BANKING | | 3416 | 01/01/2015 - 01/30/2015 | 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 |
| DESCRIPTION | AMOUNT | DESCRIPTION | | AMOUNT |
| BEGINNING BALANCE | $23,596.87 | AVERAGE BALANCE | | $321,321.64 |
| DEPOSITS/CREDITS | $1,557,497.50 | AVERAGE COLLECTED BALANCE | | $308,184.84 |
| CHECKS | $181,675.20 | NUMBER OF DAYS IN STATEMENT PERIOD | | 30 |
| WITHDRAWALS/DEBITS | $743,306.19 | ANNUAL PERCENTAGE YIELD EARNED | | .01% |
| ENDING BALANCE | $656,112.98 | INTEREST PAID YEAR TO DATE | | $2.53 |
| | | DEPOSITS/CREDITS | | |
| DATE | AMOUNT DESCRIPTION | | | SR BATCH |
| 01/02 | 430,680.20 ELECTRONIC/ACH CREDIT | | | 30  02005590212 |
| | PARK AND KING PH DIRECT DEP | 536052919525XZZ | | |

Additionally, Park and King Pharmacy's 2014 Payroll Details (United States'
Trial Exhibit 2E), an excerpt of which has been provided below in Table 4, similarly
reflects the same net pay to Balotin in December 2014.

| Table 4 | | | | |
|---|---|---|---|---|
| **Employee: BALOTIN, SCOTT M** | | | SSN: xxx-xx-5720 | |
| Regular | 0.00 | 2,365,200.97 | FED FIT | 1,442,813.03 |
| Commission | 0.00 | 1,459,083.39 | FED SOCSEC | 7,254.00 |
| Expense reimbursement non-taxable | 0.00 | 8,430.04 | FED MEDCARE | 55,452.12 |
| | | | FED MEDCARE-HI | 32,618.56 |
| | 0.00 | 3,832,714.40 | | 1,538,137.71 |
| Check Date: 09/30/2014 / Prior Payroll Amounts | | | | |
| Check Date: 11/24/2014 / Prior Payroll Amounts | | | | |
| Check Date: 12/02/2014 / Direct Deposit / Checking / Account No: XXXXXXXX3416 | | | | $226,406.64 |
| Check Date: 12/16/2014 / Direct Deposit / Checking / Account No: XXXXXXXX3416 | | | | $197,767.33 |
| Check Date: 12/18/2014 / Direct Deposit / Checking / Account No: XXXXXXXX3416 | | | | $8,430.04 |
| Check Date: 12/31/2014 / Direct Deposit / Checking / Account No: XXXXXXXX3416 | | | | $430,680.20 |

Thus, as demonstrated by the above review of the January 2, 2015 deposit for
$430,680.20, the proceeds amounts in Table 1 reflects the net proceeds Balotin
personally obtained from Park and King Pharmacy, as supported by his Suntrust
3416 bank records, his Park and King Pharmacy earning statement, and Park and
King Pharmacy's payroll details. Although Section 982(a)(7) authorizes the
forfeiture of the gross proceeds of health care fraud, the United States does not have
all the earning statements necessary to calculate Balotin's gross proceeds.

   *iii.*  *The Proceeds Amount Only Includes Sums Traceable to the Fraud*

   In calculating the proceeds amount, Agent Coriligano purposefully avoided
any inclusion of proceeds that were either voided or that he could not completely

trace from Park and King Pharmacy to Balotin's Suntrust 3416 account. For example, as reflected in Park and King Pharmacy's 2015 Payroll Details (United States' Trial Exhibit 5B, p. 17), a copy of which has been provided in Table 5 below, Park and King Pharmacy voided a duplicate transaction of its payment to Balotin for $307,486.82. It also issued payment to Balotin in the amount of $89,577.84 but in the form of a "Manual Check." Because the $307,486.82 payment was voided and the $89,577.84 manual check payment could not be completely traced to Suntrust 3416, these types of payments were disregarded by Agent Corigliano when computing the total proceeds amount.

| Table 5 | | | | |
|---|---|---|---|---|
| **Employee: BALOTIN, SCOTT M** | | | SSN: xxx-xx-5720 | |
| Regular | 0.00 | 149,730.29 | FED FIT | 300,854.12 |
| Commission | 0.00 | 630,149.32 | FED SOCSEC | 7,347.00 |
| Expense | 0.00 | 30,936.51 | FED | 11,308.25 |
| reimbursement | | | MEDCARE | |
| non-taxable | | | FED | 5,218.92 |
| | 0.00 | 810,816.12 | MEDCARE-HI | |
| | | | | 324,728.29 |
| Check Date: 01/20/2015 / Manual Check / Check No: 4476   $89,577.84 | | | | |
| Check Date: 01/20/2015 / Direct Deposit / Checking / Account No: XXXXXXXX3416   $30,936.51 | | | | |
| Check Date: 01/20/2015 / Direct Deposit / Checking / Account No: XXXXXXXX3416   $307,486.82 | | | | |
| Check Date: 01/30/2015 / Direct Deposit / Checking / Account No: XXXXXXXX3416   $307,486.82 | | | | |
| Check Date: 01/30/2015 / Void Direct Deposit / Checking / Account No: XXXXXXXX3416   $307,486.82 | | | | |
| Check Date: 02/02/2015 / Direct Deposit / Checking / Account No: XXXXXXXX3416   $58,086.66 | | | | |

     *iv.    An Order of Forfeiture for Proceeds in the Amount of $2,763,945.66 Should Be Entered, Without Offset.*

     Accordingly, the United States requests that the Court enter a preliminary order of forfeiture for proceeds in the amount of $2,763,945.66, the amount that

Balotin obtained as a result of his participation in the conspiracy to commit health care fraud, as supported by the trial record. Given the conservative approach to calculating the total amount of proceeds, downward offset is not warranted. Furthermore, since Balotin no longer has these funds, or they have been transferred or commingled with other property, which cannot be divided without difficulty, pursuant to Rule 32.2(b)(2) and 21 U.S.C. § 853(p), it is appropriate for the Court to enter a $2,763,945.66 preliminary order of forfeiture for proceeds and authorize the United States to forfeit substitute assets.

### B.   Proceeds Involved in an Illegal Monetary Transaction

From the testimony and exhibits presented at trial, the Court also has a sufficient factual basis to enter an order of forfeiture for $300,000, the amount of proceeds involved in Balotin's illegal monetary transaction as charged in Count Twelve. Agent Corigliano testified that a portion of the proceeds deposited by Park and King Pharmacy was subsequently transferred to Balotin and his wife's investment account, USAA 1681. *See* Trial Tr. VII, at p. 176-178, 184. The bank records corroborate this testimony.

On January 1, 2015, Suntrust 3416 had a balance of $23,596.87. *See* United States Trial Ex. 2A, at p. 28. On January 2, 2015, Park and King Pharmacy transferred $430,680.28 in proceeds into the account. *Id.* at p. 27. The only other deposit into the account was an electronic deposit for $1,154.65 on January 6, 2015, the same day Balotin transferred $300,000 out of the account. *Id.* at p. 27-28. After the deposits but before the $300,000 was withdrawn, the account show debits

totaling $70,103.50, leaving a balance of $385,328.30 in Suntrust 3416 before the illegal monetary transaction occurred, of which 93.88% was fraud and 6.12% was clean money.  The account balance and deposits are included on the Suntrust 3416 records (United States' Trial Exhibit 12B, at p. 1), an excerpt of which is provided in Table 6 below.

| Table 6 | | | | |
|---|---|---|---|---|
| | | **ACCOUNT SUMMARY** | | |
| ACCOUNT TYPE | | ACCOUNT NUMBER | STATEMENT PERIOD | TAXPAYER ID |
| SIGNATURE ADVANTAGE BANKING | | 3416 | 01/01/2015 - 01/30/2015 | 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 |
| DESCRIPTION | AMOUNT | DESCRIPTION | | AMOUNT |
| BEGINNING BALANCE | $23,596.87 | AVERAGE BALANCE | | $321,321.64 |
| DEPOSITS/CREDITS | $1,557,497.50 | AVERAGE COLLECTED BALANCE | | $308,184.84 |
| CHECKS | $181,675.20 | NUMBER OF DAYS IN STATEMENT PERIOD | | 30 |
| WITHDRAWALS/DEBITS | $743,306.19 | ANNUAL PERCENTAGE YIELD EARNED | | .01% |
| ENDING BALANCE | $656,112.98 | INTEREST PAID YEAR TO DATE | | $2.53 |
| | | **DEPOSITS/CREDITS** | | |
| DATE | AMOUNT | DESCRIPTION | | SR BATCH |
| 01/02 | 430,680.20 | ELECTRONIC/ACH CREDIT | | 30  0200559021 |
| | | PARK AND KING PH DIRECT DEP | 536052919525XZZ | |
| 01/06 | 1,154.65 | ELECTRONIC/ACH CREDIT | | 30  0500915086 |
| | | Payroll        PAY | 22681031 | |

On January 6, 2015, within four days of the direct deposit of $430,680.20 in proceeds, Balotin transferred $300,000 of the proceeds from Park and King Pharmacy, from Suntrust 3416 account to "NATL FIN SVC LLC." This January 6, 2015 transaction is included on the Suntrust 3416 records (United States' Trial Exhibit 12B, at p. 2), an excerpt of which is provided in Table 7 below.[2]

---

[2] "EFT" in the Suntrust 3416 records appears to refer to "electronic funds transfer."

| Table 7 | | | | | |
|---|---|---|---|---|---|
| | | WITHDRAWALS/DEBITS | | | |
| DATE PAID | AMOUNT | DESCRIPTION | | SR | BATCH |
| 01/02 | 5,000.00 | OVER-THE-COUNTER WITHDRAWAL | | 20 | 77088530 |
| 01/05 | 685.41 | ELECTRONIC/ACH DEBIT | | 30 | 05008482405 |
| | | CAPITAL ONE        MOBILE PMT  500239809059655 | | | |
| 01/05 | 3,728.30 | ELECTRONIC/ACH DEBIT | | 30 | 05008482406 |
| | | CAPITAL ONE        MOBILE PMT  500239809059652 | | | |
| 01/05 | 5,500.00 | ELECTRONIC/ACH DEBIT | | 30 | 05009257142 |
| | | VGI-PRIME MM       INVESTMENT 003088066908977 | | | |
| 01/05 | 5,500.00 | ELECTRONIC/ACH DEBIT | | 30 | 05009257143 |
| | | VGI-PRIME MM       INVESTMENT 003088066909565 | | | |
| 01/06 | 48,869.31 | ELECTRONIC/ACH DEBIT | | 30 | 05012317068 |
| | | AMEX EPayment      ACH PMT    W1648 | | | |
| 01/06 | 820.48 | ELECTRONIC/ACH DEBIT | | 30 | 05011041445 |
| | | JEA Utilities     PAYMENT    2366824200 | | | |
| 01/06 | 300,000.00 | ELECTRONIC/ACH DEBIT | | 30 | 06003328949 |
| | | NATL FIN SVC LLC   EFT       RNQ531681 U5E4Z | | | |

On the same day, January 6, 2015, the $300,000 in EFT funds were "received" into Balotin's USAA 1681 account. This January 6, 2015 transaction is included on the USAA 1681 records (United States Trial Exhibit 12A, at p. 6), an excerpt of which is provided in Table 8 below.

| Table 8 | | | | |
|---|---|---|---|---|
| **Deposits** | | | | |
| 01/06/15 | CASH | EFT FUNDS RECEIVED | EFT FUNDS RECEIVED ER50640083 | $300,000.00 |

The USAA 1681 records (United States Trial Exhibit 12A, at p. 5) further shows that the January 6, 2015 "EFT Funds Received" transaction aligns with a same-day purchase of a USAA Money Market check for the identical amount of $300,000. An excerpt showing the January 6, 2015 USAA money market check transaction is provided in Table 9 below, and shows that Balotin immediately spent the $300,000 he deposited into USAA 1681. Since Balotin transferred the funds to a third party, the funds are no longer available.

17

| Table 9 | | | | | |
|---|---|---|---|---|---|
| 01/06/15 | CASH | YOU BOUGHT | USAA MONEY MARKET @ 1 | 300,000 | ($300,000.00) |

Accordingly, the $300,000 in proceeds that Balotin transferred from Suntrust 3416 to USAA 1681 was involved in an illegal monetary transaction of a value greater than $10,000, in violation 18 U.S.C. § 1957. As such, pursuant to 18 U.S.C. § 982(a)(1), the United States requests that the Court enter a preliminary order of forfeiture for the $300,000 involved in Count Twelve. Because at least $281,628.49[3] of the $300,000 in laundered funds constitute proceeds, that amount will be concurrent with the preliminary order of forfeiture for proceeds.

## C.    Substitute Assets in Partial Satisfaction of Order for Proceeds

As noted previously, the United States maintains that Balotin has transferred the proceeds (and property involved in an illegal monetary transaction) to a third party or has commingled them with other property, which cannot be divided without difficulty. Balotin does not appear to dispute the United States assertion that the proceeds of his crimes (and property involved in an illegal monetary transaction) are no longer available. At every opportunity, he has represented to the Court that his only asset is his one-half interest in his marital home. Because as a result of Balotin's actions, the proceeds and involved in property are no longer available to be forfeited,

---

[3] Using the last-in last-out method, which is the calculation most favorable to Balotin, the balance of $385,328.30 in Suntrust 3416 consisted of 93.88% fraud proceeds and 6.12% clean money. Applying those percentage to the $300,000 in illegal monetary transaction indicates that $281,628.49 of that transaction was fraud.

18

the United States seeks an order of forfeiture for substitute assets named above, *supra* at p. 1-2, including: (i) Balotin's interest in the Kesley property, titled jointly in the names of Scott Balotin and Ellen Balotin; (ii) the Myra, Ernest, Eudine, Begonia, 3638 Jammes, and 4056 Jammes properties, titled in the name of Ellen Balotin, as trustee of various land trusts, which are nominees for Scott Balotin; and (iii) Blue Bridge Partners, LLC, a business in Balotin's name. Upon the issuance of the preliminary order of forfeiture for proceeds and involved in property, the United States will be entitled to seek forfeiture of any of Balotin's assets, including the subject properties, to satisfy his order of forfeiture. The net proceeds from the sale of the subject properties will be credited in partial satisfaction of Balotin's order of forfeiture for proceeds.

## IV.   CONCLUSION

For the reasons stated above, the United States requests that the Court, pursuant to 18 U.S.C. § 982(a)(1) and (7) and Fed. R. Crim. P. 32.2(b), enter a preliminary order of forfeiture for proceeds in the amount of $2,763,945.66, which reflects the proceeds that Balotin personally obtained as a result of his participation in the conspiracy to commit health care fraud, and $300,000 involved in Balotin's illegal monetary transaction. In accordance with Rule 32.2(b)(4)(A), the United States requests that the preliminary order of forfeiture for proceeds and involved in property become final as to Balotin at sentencing. As noted above, because $281,628.49 of the $300,000 in involved in property was proceeds, that portion of the

19

preliminary order of forfeiture for involved in property will be concurrent with the preliminary order of forfeiture for proceeds.

As required by Fed. R. Crim. P. 32.2(b)(4)(B), the United States requests that the Court include the forfeiture when orally pronouncing the sentence and include the forfeiture order in the judgment. *See* Fed. R. Crim. P. 32.2(b)(4)(A) and (B) and *United States v. Kennedy*, 201 F.3d 1324, 1326 (11th Cir. 2000).

The United States further requests that, because the proceeds were dissipated or commingled by Balotin, the United States may seek, as a substitute asset, pursuant to Fed. R. Crim. P. 32.2(e) and 21 U.S.C. § 853(p), forfeiture of any of Balotin's property up to the amount of the preliminary order of forfeiture for proceeds.

Finally, the United States further requests that the Court retain jurisdiction to enter any order necessary for the forfeiture and disposition of any substitute assets forfeited to the United States up to the amount of the preliminary order of forfeiture for proceeds, and to address any third party claim that may be asserted in these proceedings.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    *s/ Mai Tran*_____
MAI TRAN
Assistant United States Attorney
Florida Bar No. 100982
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone: (904) 301-6300
E-mail: mai.tran2@usdoj.gov

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

<u>*s/ Mai Tran*</u>
MAI TRAN
Assistant United States Attorney

21