## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

vs.                                            Case No.  3:19-cr-191-MMH-JBT

SCOTT BALOTIN
THOMAS JONES

_____/

### O R D E R

**THIS CAUSE** is before the Court on the United States' Amended Motion

for Preliminary Order of Forfeiture for Proceeds and Specific Asset (Doc. 712;

Jones Motion), filed May 4, 2023, and the United States' Third Amended Motion

for Preliminary Order of Forfeiture for Proceeds and for Substitute Assets (Doc.

726; Balotin Motion), filed August 2, 2023.  Defendants Thomas Jones and Scott

Balotin each filed a response in opposition to the respective motion applicable

to him.  See Response to the United States Amended Motion for Preliminary

Order of Forfeiture for Proceeds and Specific Asset (Doc. 719; Jones Response),

filed May 25, 2023; Defendant Scott Balotin's Opposition to the United States'

Third Amended Motion for Preliminary Order of Forfeiture for Proceeds and for

Substitute Assets (Doc. 727), filed August 2, 2023.  In his response, Balotin

reasserts the arguments made in his response to the Government's second

amended motion for forfeiture.  See Defendant Scott Balotin's Opposition to the

Government's Amended Motion for Preliminary Order of Forfeiture for Proceeds (Doc. 718; Balotin Response), filed May 25, 2023. Accordingly, this matter is ripe for review.[1]

## I.   Background

Following a four-week jury trial, on October 18, 2021, the jury returned a verdict finding Balotin guilty as to the charges in Counts One and Twelve of the Indictment (Doc. 1; Indictment). See Verdict as to Scott Balotin (Doc. 522; Balotin Verdict). Specifically, the jury found Balotin guilty of conspiring to commit health care fraud in violation of 18 U.S.C. § 1349 (Count One) and engaging in an illegal monetary transaction in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2 (Count Twelve). See id. at 1, 3; see also Indictment at 1–8, 12–13. The jury acquitted Balotin of Count Two, which charged the solicitation and receipt of a health care kickback in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), and Count Ten, which charged the payment of a health care kickback in violation of 42 U.S.C. § 1320a-7b(b)(2)(A). See Balotin Verdict at 2. The jury also returned a verdict finding Jones guilty of conspiring to commit health care

---

[1] The Government also filed United States' Motion for Order Directing Defendant [Jones] to Notify the Court if He Wants a Jury Determination for Forfeiture of the Real Property (Doc. 711), filed May 4, 2023. After Jones did not respond to that motion within the time allowed by the Local Rules of this Court, the Court directed him to respond. See Endorsed Order (Doc. 721), filed June 13, 2023. Rather than arguing that the Government is not entitled to the relief requested, Jones responded by stating that he does not want a jury determination. See Response to the United States Motion for Order Directing Defendant to Notify the Court if He Wants a Jury Determination for Forfeiture of the Real Property (Doc. 722), filed June 14, 2023. Therefore, the Court will deny the Government's motion (Doc. 711) as moot.

fraud (Count One) and engaging in an illegal monetary transaction (Count Seventeen).  <u>See</u> Verdict as to Thomas Jones (Doc. 524; Jones Verdict) at 1, 3; <u>see also</u> Indictment at 1–8, 12–14.  The jury found Jones not guilty of soliciting and receiving a health care kickback (Count Four) and of paying a health care kickback (Count Nine).  <u>See</u> Jones Verdict at 2.

The Court retained the jury to determine whether two of Jones's specific properties are forfeitable.  The jury found the requisite nexus between Jones's 2015 Cadillac Escalade, VIN 1GYS3PKJXFR68195 (Cadillac), and the offenses in Counts One and Seventeen.  <u>See</u> Special Verdict Form as to Thomas Jones (Doc. 528; Forfeiture Verdict) at 1–2.  However, the jury did not reach a verdict as to whether the real property located at 3691 S. Cathedral Oaks Place, Jacksonville, Florida 32217 (Cathedral Oaks Property), is forfeitable.  <u>See</u> <u>id.</u> at 2.

## II.    Applicable Law

Section 982 of title 18 of the United States Code authorizes criminal forfeiture of property for Defendants' convictions.  <u>See</u> 18 U.S.C. § 982(a)(1) (forfeiture for illegal monetary transactions); <u>id.</u> § 982(a)(7) (forfeiture for Federal health care offenses).  Section 982 also incorporates the provisions of 21 U.S.C. § 853(p) regarding the forfeiture of substitute assets.  <u>See</u> <u>id.</u> § 982(b)(1).  Notably, criminal forfeiture "is a matter of sentencing" after a conviction for a substantive offense.  <u>United States v. Dicter</u>, 198 F.3d 1284,

1289 (11th Cir. 1999).  Because forfeiture is an aspect of sentencing, the Government only needs to prove the elements of forfeiture by a preponderance of the evidence.  See id.; United States v. Hasson, 333 F.3d 1264, 1277–78 (11th Cir. 2003).  If the Government meets its burden, forfeiture is mandatory. United States v. Waked Hatum, 969 F.3d 1156, 1162 (11th Cir. 2020); see 28 U.S.C. § 2461(c).

Rule 32.2 of the Federal Rules of Criminal Procedure (Rule(s)) governs the procedures for imposing criminal forfeiture.  Rule 32.2(b)(1)(A) requires that, "[a]s soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute."  Rule 32.2(b)(1)(A).  Under the rule, "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."  Id.; see United States v. Elbeblawy, 899 F.3d 925, 940–41 (11th Cir. 2018) (finding that an in personam forfeiture money judgment against a defendant is authorized in a health care fraud conspiracy case); Waked Hatum, 969 F.3d at 1163–64 (same in a money laundering case).  In a case where the Government seeks forfeiture of specific property such as real property, "the court must determine whether the government has established the requisite nexus between the property and the offense."  Rule 32.2(b)(1)(A); see In re Rothstein, Rosenfeldt, Adler, P.A., 717

F.3d 1205, 1212 (11th Cir. 2013).  If the Government cannot establish the requisite nexus for specific property, the Government may still seek forfeiture of the property by showing that the requirements of 21 U.S.C. § 853(p) are met. See In re Rothstein, Rosenfeldt, Adler, P.A., 717 F.3d at 1212.

To make a forfeiture determination, the Court may rely "on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Rule 32.2(b)(1)(B).  The Federal Rules of Evidence do not apply.  See Fed. R. Evid. 1101(d)(3).  Although a court may not order forfeiture based on acquitted offenses, a court may consider "evidence introduced in support of those counts for other purposes" such as determining the proper amount of forfeiture for an offense of which the defendant was convicted.  Hasson, 333 F.3d at 1279 n.19. Moreover, determining forfeiture is often not a precise calculation: "[n]umerous cases have upheld reasonable estimates for calculating criminal forfeiture." United States v. Mazkouri, 945 F.3d 293, 306–07 (5th Cir. 2019) (collecting cases).  "If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty."[2]  Rule 32.2(b)(1)(B).

Once the Court finds that property is subject to forfeiture, "it must promptly enter a preliminary order of forfeiture setting forth the amount of any

---

[2] No party has requested a hearing on forfeiture in this case.

money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Rule 32.2(b)(2)(A).  The Court must enter the preliminary order of forfeiture "without regard to any third party's interest in the property."  Id. Rule 32.2 also requires that, "[u]nless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4)."  Rule 32.2(b)(2)(B).  "If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the total amount of the money judgment," the Court may enter a general preliminary order of forfeiture. Rule 32.2(b)(2)(C). The Court's preliminary order of forfeiture becomes final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents." Rule 32.2(b)(4)(A).  Finally, Rule 32.2(e) provides the Court with continuing authority to enter a forfeiture order or amend an existing order when the Government later locates forfeitable assets or seeks substitute assets. See Rule 32.2(e)(1).

## III.   Discussion

Having carefully reviewed the parties' briefing and the applicable law, the Court finds that it is able to issue a preliminary order of forfeiture as to

Counts Twelve and Seventeen.  As to Count One, however, the Court has insufficient information to enter a specific preliminary order of forfeiture.

### A.    Count One: Proceeds of Health Care Fraud Conspiracy

With regard to Balotin, the Government asks the Court to enter a preliminary order of forfeiture for proceeds of the conspiracy to commit health care fraud charged in Count One in the amount of $2,763,945.66.  See Balotin Motion at 1.  The Government argues that the evidence at trial showed that this amount moved from TRICARE to Park and King Pharmacy and then to Balotin.  See id. at 9–11.  The Government asserts that it is seeking forfeiture of the net proceeds that Balotin received after the deductions for federal income tax, social security, and Medicare.  See id. at 11–12.  According to the Government, the $2.7 million it seeks to recover includes only sums traceable to the fraud conspiracy because Agent Corigliano "purposefully avoided any inclusion of proceeds that were either voided or that he could not completely trace from Park and King Pharmacy to Balotin's Suntrust 3416 account."  Id. at 14.

Balotin contends that the Court should deny the Government's request for a preliminary order of forfeiture for proceeds in the amount of $2,763,945.66.  See Balotin Response at 1. Balotin argues that the Government has assumed that all of the money that Park and King Pharmacy paid to Balotin was proceeds of the health care fraud conspiracy charged in Count One.  See id. at

5.  Balotin asserts that evidence shows that at least some of the claims paid by TRICARE were not fraudulent—the medications were medically necessary, were provided to patients, and were not prescribed by doctors who had certified that they would not pay or receive kickbacks when that certification was false. See id. at 6–13.  Balotin maintains that there is no factual basis from which the Court could reasonably estimate what percentage of his income from Park and King Pharmacy resulted from health care fraud, as opposed to legitimate health care or non-fraudulent kickbacks.  See id. at 6 & n.1, 8–9, 13–14, 18–19.

With regard to Jones, the Government asks the Court to enter a preliminary order of forfeiture for $1,389,840.27 of proceeds from the conspiracy charged in Count One.  See Jones Motion at 1.  The Government argues that the evidence at trial showed that this amount moved from TRICARE to Park and King Pharmacy and Villa Pharmacy and then to Jones.  See id. at 10–11. The Government contends that the payments from Villa Pharmacy to Jones ought to be included in the forfeiture because the same patient recruiters were working under Jones when he worked with both pharmacies and because many of the same patients moved from Park and King Pharmacy to Villa Pharmacy around March of 2015.  See id. at 12.  In addition, the Government requests a preliminary order of forfeiture for the Cadillac consistent with the jury's special verdict.  See id. at 1.  Finally, the Government asserts that the Cathedral Oaks Property is traceable to Jones's proceeds from Park and King Pharmacy and

Villa Pharmacy.  See id. at 16.  According to the Government, Jones paid $310,000 of the real property's $350,000 purchase price using proceeds from the fraud.  See id. at 19.  The Government maintains that the remaining value of the real property is forfeitable as a substitute asset.  See id.

In his response, Jones argues that the Government is not entitled to a money judgment in the amount of $1,389,840.27 because that amount includes proceeds from the alleged offenses that the jury acquitted Jones of and includes amounts "attributable to other co-defendants, alleged co-conspirators and actors."  Jones Response at 1, 6–7.  Jones also contends that he was legally entitled to receive much of his income from the pharmacies.  See id. at 3, 7.

Section 982(a)(7) of title 18 of the United States Code provides, "The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense."  18 U.S.C. § 982(a)(7); see also 18 U.S.C. § 24(a)(1) (defining "Federal health care offense" to include a criminal conspiracy to commit health care fraud).  In a health care fraud case, the Court may order forfeiture only of proceeds that the defendant actually obtained.  See Elbeblawy, 899 F.3d at 941–42 (holding that, pursuant to the Supreme Court's reasoning in Honeycutt v. United States, 581 U.S. 443 (2017), a defendant may not be held

"jointly and severally liable for the proceeds" that he himself did not acquire as part of a health care fraud conspiracy).

The statutory language "gross proceeds traceable to the commission of the offense" imposes a "but for" standard. <u>United States v. Moss</u>, 34 F.4th 1176, 1194 (11th Cir. 2022). When a defendant asserts that he is entitled to keep reimbursements received for legitimate services, the Court must ask, "if [the defendant] had not committed fraud, would he have been entitled to any proceeds for his legitimate services?" <u>Id.</u> at 1195. For example, all of the gross proceeds received for an improperly billed claim are forfeitable even if the defendant provided some legitimate underlying service because the federal health care program would have paid nothing if it had known of the improper billing. <u>See id.</u> at 1195–96. The Eleventh Circuit has offered the following example of when a defendant may be entitled to keep some of the proceeds:

> [C]onsider a hypothetical where a doctor submits three claims. Claims one and two involve some legitimate services but are fraudulent because they are improperly billed while claim three is legitimate and properly billed, not fraudulent. Take away the fraud — which is claims one and two — and claim three would still be for legitimate proceeds that the doctor would be entitled to be paid for even without the fraudulent claims.

<u>Id.</u> at 1195. However, even in this situation, a defendant may be required to forfeit reimbursements for a properly billed claim for legitimate services if "the fraud was pervasive and the defendant's operations could not have continued at all without it." <u>Id.</u> at 1195 & n.7. In that scenario "where the legitimate

services were being so heavily propped up by money from the fraud that they could not exist without it," the Court may order the defendant to forfeit all reimbursements.  Id.; see United States v. Gladden, --- F.4th ----, No. 21-11621, 2023 WL 5281836, at *12 (11th Cir. Aug. 17, 2023) ("A defendant's salary may be the proper measure of forfeiture where 'the fraud was pervasive and the [company's] operations could not have continued at all without [the fraud].'" (alterations in original) (quoting Moss, 34 F.4th at 1195)).

Here, the Court must order Balotin and Jones to forfeit the gross proceeds of their health care fraud conspiracy.  See 18 U.S.C. § 982(a)(7).  However, the Court finds that the Government has provided insufficient information for the Court to determine the amount of gross proceeds traceable to the commission of this offense.  At trial, much of the evidence focused on the payment and receipt of health care kickbacks.  While the payment or receipt of a health care kickback can be a crime, see 42 U.S.C. § 1320a–7b(b), the mere payment or receipt of a kickback is not health care fraud.  See United States v. Medina, 485 F.3d 1291, 1298 (11th Cir. 2007) (finding that "paying kickbacks alone is not sufficient to establish health care fraud . . . . without someone making a knowing false or fraudulent representation to [a health care benefit program]").  Notably, in one case from 2017, the Eleventh Circuit found that it was plain error for the district court to order forfeiture based on a different offense from the one of which the defendant was convicted.  See United States v. Mayer, 679 F. App'x 895, 903–

04 (11th Cir. 2017) (per curiam).[3]  In <u>Mayer</u>, the defendant was convicted of conspiracy to commit wire fraud <u>affecting a financial institution</u> and eight substantive counts of wire fraud affecting a financial institution.  <u>See</u> <u>id.</u> at 897–98.  The district court ordered the forfeiture of proceeds obtained as a result of the defendant's "related scheme to commit wire fraud <u>not affecting a financial institution</u>," a different offense not covered by the forfeiture statute at issue. <u>Id.</u> at 904 (emphasis added).  The Eleventh Circuit held that the district court plainly erred because "at least some" of the forfeited proceeds "were not obtained directly or indirectly as a result of the offenses for which Mayer was convicted."  <u>Id.</u>

In this case, § 982(a)(7) authorizes the Court to forfeit only those assets "traceable to the commission of the offense" of which Defendants were convicted.  18 U.S.C. § 982(a)(7).  Because Defendants were not convicted of a kickbacks charge, the Court has no authority to order forfeiture based on a scheme to pay and receive kickbacks unless those kickbacks were also in some way part of the health care fraud conspiracy.  While the Government has proven the amount of money that moved from TRICARE to the pharmacies and from there to Balotin and Jones, the Government apparently has assumed that all of

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

the money is proceeds of the health care fraud conspiracy.  For example, in the section of the Balotin Motion titled "The Proceeds Amount Only Includes Sums Traceable to the Fraud," the Government avers that Agent Corigliano "purposefully avoided any inclusion of proceeds that were either voided or that he could not completely trace from Park and King Pharmacy to Balotin's Suntrust 3416 account."  Balotin Motion at 14.  This information shows that the Government has only included amounts that Balotin actually received from Park and King Pharmacy, but it says nothing about whether all of that money was proceeds of the health care fraud conspiracy.

If portions of Balotin's and Jones's earnings are not attributable to the health care fraud conspiracy, the Court needs a reasonable way to estimate the amounts attributable to the offense of conviction.  The Government has not proposed any reasonable method of estimation.  The Government asserts that there should be no offset in the forfeiture award because of the Government's "conservative approach to calculating the total amount of proceeds."  Id. at 15.  But the Government's conservative approach is to exclude payroll deductions and voided or untraceable payments.  See id. at 11–15.  Nothing in the record suggests that these deductions reasonably approximate the amount of proceeds traceable to a kickbacks scheme versus proceeds of a health care fraud conspiracy.  For the same reasons, the Court cannot determine what percentage, if any, of the Cathedral Oaks Property is traceable to the proceeds

of the health care fraud conspiracy without knowing what proceeds Jones received from that offense.

Therefore, the Court finds that additional briefing is warranted.  The Court reminds the Government that it bears the burden to prove the statutory elements of forfeiture.  To meet that burden in its supplemental briefing, the Government must cite specific evidence.[4]  The Government may not simply rely on generalities about what the record purportedly shows.  Nevertheless, the Court will enter a preliminary order of forfeiture as to the Cadillac in accordance with the jury's special verdict.  See Forfeiture Verdict at 1.

### B.   Counts Twelve and Seventeen: Property Involved in Illegal Monetary Transactions

The Government asks the Court to enter a preliminary order of forfeiture against Balotin for $300,000 involved in the illegal monetary transaction charged in Count Twelve.  See Balotin Motion at 1, 16–19.  Balotin argues that he should be required to forfeit only $10,001 pursuant to his conviction for Count Twelve.  See Balotin Response at 15, 18.  Balotin maintains that the Government has not proven that the entirety of the $300,000 transfer was of tainted funds resulting from illegal kickbacks or health care fraud.  See id. at 16–18.  Nonetheless, Balotin concedes that the jury must have found that at

---

[4] In factually similar cases, the Eleventh Circuit has identified a wide range of evidence that can reveal health care fraud.  See United States v. Grow, 977 F.3d 1310, 1321–26 (11th Cir. 2020); United States v. Chalker, 966 F.3d 1177, 1185–88 (11th Cir. 2020).

least $10,001 of the transaction was criminal proceeds involved in or traceable to the illegal monetary transaction.  See id. at 18.

"The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  18 U.S.C. § 982(a)(1). Under this statute, "[p]roperty eligible for forfeiture 'includes that money or property which was actually laundered ("the corpus"), along with "any commissions or fees paid to the launderer and any property used to facilitate the laundering offense."'"  Waked Hatum, 969 F.3d at 1162 (quoting United States v. Seher, 562 F.3d 1344, 1368 (11th Cir. 2009)).  Although "the pooling or commingling of tainted and untainted funds would not by itself render the entirety of an account subject to forfeiture, if the government establishes that the defendant did so 'to facilitate or "disguise" his illegal scheme,' then forfeiture is acceptable."  Seher, 562 F.3d at 1368 (quoting United States v. Puche, 350 F.3d 1137, 1153 (11th Cir. 2003)).

Here, the Court concludes that the entire $300,000 that Balotin transferred from his SunTrust bank account to his USAA brokerage account was money "involved in" his illegal monetary transaction.  The Government alleged in the Indictment that this $300,000 transfer was an illegal monetary transaction "in criminally derived property of a value greater than $10,000."

Indictment at 12–13.  The jury found that it was.  <u>See</u> Balotin Verdict at 3. Thus, this is not a case where the Government seeks forfeiture of an account containing tainted and untainted funds that were incidentally pooled together after a criminal transaction.  Instead, the Government is seeking to forfeit the very funds used in the illegal monetary transaction.  Even if some of the funds were not "tainted" proceeds, they were still involved in the transaction.  <u>See United States v. Vico</u>, No. 15-CR-80057-ROSENBERG/HOPKINS, 2016 WL 233407, at *8 (S.D. Fla. Jan. 20, 2016) ("Assuming some legitimate funds may have been commingled with the funds used in the money laundering transactions, those funds are also forfeitable as the corpus of the money-laundering offense."), <u>aff'd</u>, 691 F. App'x 594 (11th Cir. 2017);[5] <u>United States v. Coffman</u>, 859 F. Supp. 2d 871, 875–77 (E.D. Ky. 2012) ("Because the allegedly clean money constitutes part of the corpus of Coffman's money laundering conviction on Count 21, it is subject to forfeiture."); <u>see also</u> Waked Hatum, 969 F.3d at 1165 (holding that § 982(a)(1) does not contain a requirement that the forfeited property be "tainted").  Therefore, the entire $300,000 is due to be forfeited.  Based on the jury's special verdict, the Court also will order the

---

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

forfeiture of Jones's Cadillac as property involved in an illegal monetary transaction.  See Forfeiture Verdict at 1–2.

### C.    Substitute Assets

Pursuant to 21 U.S.C. § 853(p), the Government asks the Court to enter a preliminary order of forfeiture for Balotin's interest in a business and several pieces of real property as substitute assets.  See Balotin Motion at 1–3.  The Government asserts that "Balotin has transferred the proceeds (and property involved in an illegal monetary transaction) to a third party or has commingled them with other property, which cannot be divided without difficulty."  Id. at 19.  The Government contends that Balotin does not dispute this assertion and has represented to the Court that "his only asset is his one-half interest in his marital home."  Id.  The Government also argues that the records for Balotin's USAA brokerage account show that he "immediately spent the $300,000 he deposited" as part of the illegal monetary transaction.  Id. at 18.  Balotin largely does not respond to the Government's arguments about substitute assets, but he notes that the transfer from his USAA brokerage account was to a money market account, not to a third party.  See Balotin Response at 15 n.32.

As to Jones, the Government maintains that he has transferred the proceeds of the health care fraud conspiracy to a third party or commingled them with other property that cannot be divided without difficulty.  See Jones Motion at 20.  Citing the Probation Office's initial presentence investigation

report, the Government argues that "[a]ll known facts demonstrate that Jones has dissipated the criminal proceeds." Id. at 3. Thus, the Government asks the Court to enter a preliminary order of forfeiture for substitute assets, "including the 19% of the Cathedral Oaks Property that is untraceable, and any additional substitute asset(s) if any are located." Id. at 20. Jones contends that the Government must first prove that he commingled or dissipated the proceeds of the health care fraud conspiracy before the Government may pursue substitute assets. See Jones Response at 3.

Section 853(p) of Title 21 provides,

(1) In general
Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant--
(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty.

(2) Substitute property
In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

21 U.S.C. § 853(p). The Supreme Court has read this provision to mean that the Government may seize substitute property "[o]nly if the Government can

prove that one of these five conditions [in paragraph (1) of § 853(p)] was caused by the defendant." <u>Honeycutt</u>, 581 U.S. at 452.  Typically, the Government can meet its burden by providing an affidavit.  <u>See, e.g.</u>, <u>Seher</u>, 562 F.3d at 1373 ("As part of the government's motion for a preliminary forfeiture order, it attached a declaration from an IRS Special Agent involved in the case stating that, based on the government's attempts to locate the missing proceeds, Seher had 'dissipated or otherwise disposed of the proceeds of his crimes.' . . . [W]e find it sufficiently specific in identifying Seher's acts and omissions for the district court to rely on it as the basis for ordering forfeiture under the substitute asset provision." (citation omitted)); <u>United States v. Javat</u>, No. 20-13310, 2022 WL 703940, at *5–6 (11th Cir. Mar. 9, 2022) (per curiam) (similar); <u>United States v. Green</u>, No. 2:12-cr-5-FtM-29CM, 2018 WL 446649, at *5 (M.D. Fla. Jan. 17, 2018) (similar).  Although any other property of the defendant may be subject to forfeiture, "[t]he District Court must be mindful that a substitute property interest may be forfeited only 'up to the value of' any forfeitable proceeds that have been commingled and are accordingly unavailable for forfeiture as proceeds."  <u>In re Rothstein, Rosenfeldt, Adler, P.A.</u>, 717 F.3d at 1214 (quoting 18 U.S.C. § 1963(m) and 21 U.S.C. § 853(p)(2)).  Thus, "[t]he Government must identify and establish the value of the proceeds that were commingled." <u>Id.</u>

As an initial matter, the Court finds that the statutory prerequisites of §

853(p)(1) are met.  The Government represents that Balotin and Jones have

transferred or commingled their directly forfeitable property.  <u>See</u> Balotin

Motion at 19; Jones Motion at 20.  Defendants do not dispute these

representations.  Although Balotin argues that the $300,000 involved in the

illegal monetary transaction was not immediately transferred to a third party,

he does not contend that he did not commingle the money or that he still

possesses it.  <u>See</u> Balotin Response at 15 n.32.  The Court notes that at previous

points in this case Balotin has been unwilling to fully disclose his assets and

has made contradictory representations to the Court about his assets.  <u>See</u>

Order (Doc. 698) at 47–51.  Balotin's prior statements to the Court support the

Court's finding that he has transferred directly forfeitable property to third

parties or has commingled it with other property which cannot be divided

without difficulty.  Similarly, while Jones notes that the Government must meet

the statutory requirements, he does not actually dispute the Government's

assertion that the alleged proceeds are unavailable.  <u>See</u> Jones Response at 3.

Moreover, the Probation Office did not discover any significant cash assets

when researching Jones's finances to prepare his initial presentence

investigation report.  <u>See</u> Presentence Investigation Report (Doc. 557) at 32–33.

From this fact and the Government's representation, the Court concludes that

Jones has transferred the proceeds from the health care fraud conspiracy to third parties or has commingled the proceeds with other property.

However, the Court finds that it cannot enter a preliminary order of forfeiture as to all of the substitute assets requested by the Government because the Government has not yet established the value of the gross proceeds of the health care fraud conspiracy. Moreover, the Government has not provided any current information as to the value of Jones's or Balotin's interests in the proposed substitute assets. Without this information, the Court has no way to limit the forfeiture of substitute property to the value of the unavailable forfeitable proceeds. See In re Rothstein, Rosenfeldt, Adler, P.A., 717 F.3d at 1214; see also United States v. Faulk, 340 F. Supp. 2d 1312, 1315 (M.D. Ala. 2004) ("Therefore, while the motion is due to be granted in general, the court cannot grant it without the government having first provided evidence that the substitute property's total value does not exceed the amount of the original money judgment."). Therefore, the Court will require additional briefing as to substitute assets.

Nevertheless, the Government has established that Balotin must forfeit the $300,000 involved in the illegal monetary transaction. As discussed above, Balotin has made these funds unavailable. From the materials in the record, it appears that Balotin has an interest in the real property at 1133 W. Kesley Lane, St. Johns, Florida 32259 (West Kesley Lane Property). See Exhibit 1

(Doc. 442-1) at 2, 4.  Therefore, the Court will enter a preliminary order of forfeiture for Balotin's interest in the West Kesley Lane Property up to the value of $300,000.

## IV.  Conclusion

While the Court can resolve some forfeiture matters, it has insufficient information to calculate the amount of money judgments for Count One and to identify all specific property subject to forfeiture.  Therefore, the Court will enter a separate preliminary order of forfeiture for each Defendant in which the Court will identify as far as possible the specific property that is forfeitable and the specific amount of any money judgment.  With respect to other matters, the preliminary orders of forfeiture will be general.  The Court also will direct additional briefing so that all forfeiture issues can be resolved before the forfeiture orders become final at sentencing.  Accordingly, it is

**ORDERED:**

1.  The United States' Third Amended Motion for Preliminary Order of Forfeiture for Proceeds and for Substitute Assets (Doc. 726) is **GRANTED, in part**, and **TAKEN UNDER ADVISEMENT, in part**.

   A.  The Motion is granted to the extent that the Court will enter a separate preliminary order of forfeiture in the amount of $300,000 against Balotin for the property involved in the

Count Twelve offense and for Balotin's interest in the West Kesley Lane Property up to $300,000 as a substitute asset. The preliminary order also will generally order the forfeiture of all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense charged in Count One.

B.    In all other respects, the Motion is taken under advisement.

2.    The United States' Amended Motion for Preliminary Order of Forfeiture for Proceeds and Specific Asset (Doc. 712) is **GRANTED, in part**, and **TAKEN UNDER ADVISEMENT, in part**.

A.    The Motion is granted to the extent that the Court will enter a separate preliminary order of forfeiture for the Cadillac. The preliminary order also will generally order the forfeiture of all other property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense charged in Count One.

B.    In all other respects, the Motion is taken under advisement.

3.    The United States is **DIRECTED** to submit supplemental briefing on or before **September 11, 2023**. The supplemental briefing must address the following issues:

A.   Is all of the income that Balotin received from Park and King Pharmacy and Jones received from Park and King Pharmacy and from Villa Pharmacy traceable to their conspiracy to commit health care fraud?

B.   If yes, what specific evidence supports a finding that all of the income that Balotin and Jones received was proceeds traceable to the health care fraud conspiracy?

    i.   Were all of the compounded cream prescriptions reimbursed by TRICARE fraudulent in some way?

    ii.   Was the fraud so pervasive that Balotin and Jones's operation could not have existed without it?

C.   If not all of the income is traceable to the health care fraud conspiracy, is there a reasonable method to estimate the percentage of proceeds that were gross proceeds of the health care fraud conspiracy?  If so, what is that method and what evidence supports its use?

D.   Regarding substitute assets, what is the approximate value of Defendants' interests in the proposed substitute assets? What evidence supports those valuations?

4.   Defendants may respond to the United States's supplemental briefing on or before **September 22, 2023**.

5.      The parties are cautioned that they must support any arguments with citations to specific evidence.  The parties may not rely on generalities about what the record does or does not show.

6.      The United States' Motion for Order Directing Defendant to Notify the Court if He Wants a Jury Determination for Forfeiture of the Real Property (Doc. 711) is **DENIED as moot**.

7.      The United States' Second Amended Motion for Preliminary Order of Forfeiture for Proceeds and for Substitute Assets (Doc. 709) is **TERMINATED**.

**DONE AND ORDERED** in Jacksonville, Florida, on August 30, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record